IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JACQUES DUPREE MIRANDA, <br><br> Plaintiff, <br><br><br><br> vs. <br><br><br> STATE OF UTAH, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br><br><br><br><br> Case No. 2:03-CV-1097 TS |

This matter is before the Court on Defendants' Motion for Summary Judgment. As a result of the Court's previous Order[1] and Plaintiff's stipulation,[2] the following claims remain: Plaintiff's First Cause of Action (Cruel and Unusual Punishment under the Eighth Amendment) against Defendants Healey and Ray; Plaintiff's Second Cause of Action (Cruel and Unusual Punishment under Article 1, Section 9 of the Utah Constitution) against Defendants Barnes, Healey, and Ray; Plaintiff's Third Cause of Action (Unnecessary Rigor under Article 1, Section 9 of the Utah Constitution) against Defendants Barnes, Healey, and Ray; Plaintiff's Sixth Cause

---

[1]Docket No. 51.

[2]Docket No. 141, at 2. Plaintiff, in his Response to Defendants' Motion for Summary Judgment, stipulated to the dismissal of Defendants Friel and Cook.

1

of Action (Conspiracy under 42 U.S.C. §§ 1983 and 1985) against Defendants Barnes, Healey, and Ray; and Plaintiff's Ninth Cause of Action (Equal Protection under the Fourteenth Amendment) against Defendants Healey and Ray.

Defendants have now moved for summary judgment on Plaintiff's remaining claims.  For the reasons discussed below, the Court will grant the motion in part and deny it in part.  The Court will grant Defendants' summary judgment on all remaining claims, except Plaintiff's claims under the Eighth Amendment and Article 1, Section 9 of the Utah Constitution as they relate to Defendant Healey.  The Court will proceed to trial on those remaining claims.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[3]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[4]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[5]

---

[3]*See* Fed. R. Civ. P. 56(c).

[4]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[5]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

## II.  QUALIFIED IMMUNITY STANDARD

"The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."[6]  "Once a defendant pleads qualified immunity as a defense, the plaintiff must show: (1) that the defendant's actions violated a constitutional or statutory right, and (2) that the rights alleged to be violated were clearly established at the time of the conduct at issue."[7]  If the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity.[8]

## III.  FACTUAL BACKGROUND

The following facts are not in dispute.  On September 20, 2001, Plaintiff was attacked by another prisoner while he was incarcerated at the Utah State Prison.  Plaintiff is an African American and a practicing Muslim.  Plaintiff was attacked by Troy Kell, an individual known to be a white supremacist and who has been sentenced to death for murdering an African American inmate while imprisoned.

At the time of the incident, Plaintiff was finishing his recreation ("rec") time.  During Plaintiff's rec time, Kell asked Defendant Healey if he would open his cell door so that he—Kell—could access a bucket of ice located outside the cell.  Defendant Healey agreed, but before opening the cell told Kell that he would open the door "[i]f you don't do anything to hurt

---

[6]*Elder v. Holloway*, 510 U.S. 510, 512 (1994).

[7]*Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  The Court notes that the Supreme Court recently ruled that the sequential two-step analysis set out in *Saucier v. Katz* is no longer mandatory.  *See Pearson v. Callahan*, --- S.Ct. ---, 2009 WL 128768, at *9 (Jan. 21, 2009).  However, as it is helpful here, the Court will continue to apply it.  *Id.*

[8]*Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

3

Miranda"[9] or something to that effect.[10]  At that point, Kell's door opened[11] and he was able to leave his cell.  Kell then attacked Plaintiff, injuring him.

Many of the other facts surrounding the altercation are disputed.  Plaintiff contends that Defendants conspired to put Kell in a position to attack him out of anger resulting from the September 11, 2001 attacks.  Defendants contend, however, that there was no such conspiracy and that Defendant Healey made an error in judgment in opening Kell's cell door.

Despite these disputes, and viewing the evidence in the light most favorable to Plaintiff, Plaintiff has presented evidence that Defendants did the following.

A.    HEALEY

As noted above, it is undisputed that Defendant Healey opened Kell's door.[12]  It is also undisputed that Healey told Kell that he would open the door "[i]f you don't do anything to hurt Miranda" or something to that effect.[13]  Plaintiff has presented evidence that Healey asked Plaintiff if he was ready and told him to put his shoes on.[14]  Plaintiff has presented evidence that, in prison terms, someone telling you to put your shoes on means that there is going to be an

---

[9]Docket No. 133, Ex. D, at 29:16-17.

[10]Plaintiff states that Defendant Healey said something to the effect of "Yeah, as long as you promise not to kill Miranda, ha-ha ha-ha." *Id*. Ex. E, at 173:11-14.

[11]It is disputed as to how far Kell's cell door was opened.

[12]*Id*. Ex. D, at 28:11-17.

[13]*Id*. at 29:16-17.

[14]*Id*. Ex. E, at 162:17-22.

altercation.[15]  There is also evidence that Kell was also told to put his shoes on and that his door

was going to open, but it is unclear who made this statement.[16]

B.     RAY

Plaintiff has presented evidence that Defendant Ray solicited an inmate to draw a picture

of Osama bin Laden doing "something nasty."[17]  Plaintiff testified that Defendant Ray showed

him two pictures of Osama bin Laden, one where bin Laden was wearing fishnet stockings[18] and

asked him to draw a similar picture.[19]  After refusing to draw such a picture, Plaintiff testified

that Defendant Ray accused him of not being patriotic.[20]  Plaintiff has presented evidence that

Defendant Ray made negative comments about Muslims.[21]  One witness testified that Defendant

Ray referred to Muslims as "sand niggers" or "rag heads"[22] and stated that they should all be

killed.[23]  There is no evidence that these statements were made to or about Plaintiff.  Indeed,

these statements were made in a different section of the prison than the section in which Plaintiff

---

[15]*Id*. 164:1-17; *id*. Ex. G, at 12:18-23; *id*. Ex. H, at 47:11-19; *id*. Ex. J, at 24:16-25.

[16]*Id*. Ex. F at 18:8-20.

[17]*Id*. Ex. I, at 28:25-29:4.  Inmate Wycherly ultimately drew a picture of Osama bin Laden engaging in sexual intercourse with a pig.  *Id*. at 26:22-27:5.  Inmate Wycherly further testified that both Ray and Barnes commented that they liked the picture.  *Id*. at 32:11-17.

[18]*Id*. Ex. E, at 74:2-20.

[19]*Id*. 74:18-19.

[20]*Id*. at 77:25-78:7.

[21]*Id*. Ex H, at 25:13-25; *id*. Ex. I, at 31:14-22.

[22]*Id*.

[23]*Id*. at 33:11-16.

and Kell were housed.[24]  Evidence has also been presented that Defendant Ray told an inmate

that the fight between Kell and Plaintiff was "kick ass," that he thought it was a good fight, and

that Kell kicked Plaintiff's ass.[25]

C.    BARNES

Similarly evidence has been presented that Defendant Barnes solicited an inmate to draw

a picture of Osama bin Laden doing something nasty.[26]  Plaintiff testified that Barnes, along with

Ray, showed him similar pictures[27] and asked him to draw something similar.[28]  When he

refused, Plaintiff testified that Barnes too accused him of not being patriotic.[29]  There is also

evidence which indicates that Defendant Barnes made negative comments toward Muslims.[30]

One inmate testified that Barnes stated that all of the Muslims in prison should be shipped to

Afghanistan to fight.[31]  There is also evidence that Defendant Barnes commented on the fight

between Plaintiff and Kell by stating that Kell didn't do much, that he could have done better,

and that he must be getting old.[32]

---

[24]*Id.* at 35:9-36:6.

[25]*Id.* at 20:8-14.

[26]*Id.* at 29:4.

[27]*Id.* Ex. E, at 74:14-20.

[28]*Id.*

[29]*Id.* at 77:25-78:7.

[30]*Id.* Ex. H, at 25:13-25; *id.* Ex. I, at 31:3-22.

[31]*Id.* at 31:15-18; *id.* at 33:6-8.

[32]*Id.* at 20:12-14.

D.       OTHER OFFICERS

A number of other statements and actions have been attributed generally to "officers" working at the Utah State Prison.  These statements and actions have not been directly attributed to any of the remaining Defendants.

For example, Plaintiff testified that, after September 11, 2001, officers would say things to him like: "What did your friends do this for?"; "Aren't those your buddies?"; or "Isn't Osama a friend of yours?"[33]  Plaintiff also testified that the officers engaged in psychological warfare.[34] Plaintiff further testified that the officers would make statements to white supremacists that Plaintiff was beating up other white supremacists and that they referred to him as "Slasher."[35] There is no evidence, however, that any of the Defendants made these statements.  Plaintiff also testified that he voiced concerns about being housed near white supremacists.[36]  There is no evidence that any of the remaining Defendants were aware of these concerns.

Another inmate, Inmate Main, testified that there have been incidents where officers had deliberately opened doors and allowed the inmates to fight.[37]  Inmate Main testified that the officers would open the cell doors to allow inmates to settle their difference and would even take bets on the fights.[38]  However, Inmate Main did not identify any of the Defendants as those

---

[33]*Id*. Ex. E, at 75:14-20.

[34]*Id*. at 76:11-16.

[35]*Id*. at 121:3-21.

[36]*Id*. at 126:1-5.

[37]*Id*. Ex. H, at 45:11-46-3.

[38]*Id*.

involved in such situations.  Main further indicated that those incidents occurred in the past.[39]
Inmate Main further testified that officers would do things to antagonize inmates.[40]  Again,
however, the Defendants were not mentioned as engaging in such activity.[41]

There is also evidence that, around the time of the incident, some officers were passing
around pictures and/or cartoons of Osama bin Laden.[42]  Again, however, it is unclear who these
officers were and whether or not the Defendants were among this group.

IV.  DISCUSSION

A.      EIGHTH AMENDMENT

Plaintiff's claim under the Eighth Amendment claim is that the Defendants failed to
protect him from Kell.  Specifically, Plaintiff's claim revolves around Defendant Healey opening
Kell's cell door, thereby giving Kell access to Plaintiff, which led to this attack.  As noted above,
Plaintiff's Eight Amendment claim remains against Defendant Ray and Healey.  Defendants Ray
and Healey argue that Plaintiff has not presented sufficient evidence to survive summary
judgment because they did not violate his Eighth Amendment rights.  Defendants further argue
that they are entitled to qualified immunity.

1.      *Personal Involvement or Participation*

As an initial matter, the Court notes that "in order to successfully assert a § 1983 claim
under the Eighth Amendment for failure to protect, a plaintiff must show personal involvement

---

[39]*Id*. at 50:22-51:17.

[40]*Id*. at 49:5-19.

[41]*Id*.

[42]*Id*. Ex. F, at 26:23-28:17; *id*. Ex. G, at 17:17-20:20; *id*. Ex. H, at 18:19-23:25.

or participation in the incident."[43]  In other words, a defendant is not liable unless an "affirmative link" exists between the defendant and the Eighth Amendment violation.[44]  With these standards in mind, the Court will discuss Plaintiff's Eighth Amendment claim against Defendants Healy, Barnes,[45] and Ray.

> a.     Ray

The evidence relating to Defendant Ray is that he: solicited an inmate to draw a picture of Osama bin Laden doing "something nasty," showed Plaintiff a picture of Osama bin Laden wearing fishnet stockings, and asked Plaintiff to draw a similar picture.  After Plaintiff refused, Defendant Ray allegedly accused Plaintiff of not being patriotic.  There is further evidence that Defendant Ray made negative comments about Muslims.  Evidence has also been presented that Defendant Ray told another inmate that the fight between Kell and Plaintiff was "kick ass," that he thought it was a good fight, and that Kell kicked Plaintiff's ass.

There is no evidence that Defendant Ray participated in any way in the opening of Kell's cell which enabled Kell to attack Plaintiff.  In fact, all evidence is to the contrary.  Defendant Ray testified that at the time the incident took place, he was in the north side of the control room talking on the telephone with his wife.[46]  Plaintiff does not dispute this.  Additionally, Defendant

---

[43]*Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).

[44]*Id.*

[45]While Plaintiff's Eighth Amendment claim against Defendant Barnes has been dismissed, that claim is substantially similar to Plaintiff's claim under Article 1, Section 9 of the Utah Constitution.  Therefore, the Court will analyze this claim as it relates to Defendant Barnes.

[46]Docket No. 133, Ex. C, at 58:21-62:2.

Ray took remedial measures once the altercation began.[47]  Defendant Ray was instructed to

remove the less-lethal weapons to quell the altercation.[48]  After a paint ball gun jammed, Ray and

the other officers racked some shotguns and were ready to deploy them, at which point SWAT

came in and stopped the altercation.[49]

Plaintiff has failed to present any evidence of Defendant Ray's personal involvement or

participation in the opening of Kell's cell door.  Plaintiff has failed to present evidence

establishing that "affirmative link" between a constitutional deprivation and the actions of

Defendant Ray.  Assuming all facts in the light most favorable to Plaintiff, as the Court must,

there is nothing to suggest that Defendant Ray participated in any deprivation of Defendant's

constitutional rights.  Therefore, Plaintiff's Eighth Amendment claim against Defendant Ray

must fail.

> b.    *Barnes*

Similar evidence has been presented regarding Defendant Barnes.  Evidence has been

presented that Defendant Barnes, along with Defendant Ray, solicited an inmate to draw a

picture of Osama bin Laden.  Plaintiff testified that Barnes, along with Ray, showed him similar

pictures and asked him to draw something similar.  When he refused, Plaintiff testified that

Barnes, as with Ray, accused him of not being patriotic.  There is also evidence which indicates

that Defendant Barnes made negative comments toward Muslims, specifically that they should

be shipped to Afghanistan to fight.  There is also evidence that Defendant Barnes commented on

---

[47]*Id.*

[48]*Id.*

[49]*Id.*

the fight between Plaintiff and Kell by stating that Kell didn't do much, that he could have done better, and that he must be getting old.

There is no evidence that Defendant Barnes participated in any way in the opening of Kell's cell, which enabled Kell to attack Plaintiff.  At the time of the incident, Defendant Barnes was walking from one side of the control room to the other to get his TV dinner.[50]  Barnes saw bits and pieces of the altercation and stated it was his job to stop the confrontation and keep Plaintiff from getting hurt.[51]  When Defendant Barnes saw Kell leave his cell and start to come down the stairs, he initiated an "A-team response" and "went through the steps we needed to try and stop what was going on."[52]  These steps included the use of a paint ball gun, which jammed, and the use of less-lethal shotguns.[53]

For the same reasons stated above with respect to Defendant Ray, there is nothing to suggest that Defendant Barnes participated in any deprivation of Defendant's constitutional rights.

   *c.*  *Healey*

Plaintiff has produced sufficient evidence that Defendant Healey was involved in the incident.  In particular, it is undisputed that Defendant Healey was the individual who opened Kell's cell and it is further undisputed that Defendant Healey told Kell that he would open his, Kell's, door "[i]f you don't do anything to hurt Miranda" or something to that effect.  Further,

---

[50]*Id*. Ex. B, at 14:24-15:21.

[51]*Id*. at 14:12-20.

[52]*Id*. at 77:2-6.

[53]*Id*. at 77:13-21.

Plaintiff has presented evidence that, before he opened Kell's cell, Healey asked Plaintiff if he was ready and told him to put his shoes on. Plaintiff has presented evidence that, in prison terms, someone telling you to put your shoes on means that there is going to be an altercation. As Plaintiff has presented sufficient evidence of Defendant Healey's participation, the Court turns to the merits of Plaintiff's Eighth Amendment claim.

### 2.     Violation of Plaintiff's Constitutional Rights

The Eighth Amendment imposes upon prison officials a duty to "take reasonable measures to guarantee the safety of the inmates."[54] This duty includes the protection of inmates from violence at the hands of other inmates.[55] "The deliberate indifference of a prison official 'to a substantial risk of serious harm to an inmate violates the Eighth Amendment.'"[56]

In order to establish an Eighth Amendment claim for failure to protect, Plaintiff "'must show that he is incarcerated under conditions posing a substantial risk of serious harm, the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component.'"[57] "The subjective component of the deliberate indifference test requires that, before liability can be imposed, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"[58]

---

[54]*Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).

[55]*Id.* at 833.

[56]*Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Farmer*, 511 U.S. at 828).

[57]*Id.* (quoting *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)).

[58]*Id.* (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).

12

"The Supreme Court has explained that 'deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result.'"[59]  The deliberate indifference standard is equal to recklessness, in which "a person disregards a risk of harm of which he is aware."[60]

The Court first turns to the objective component.  "The objective component of the test is met if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause."[61]  Defendants argue that Plaintiff cannot shown that he was incarcerated under conditions posing a substantial risk of harm because Plaintiff was housed in the most secure housing unit of the Utah State Prison.  The Court disagrees.  The Court finds that Plaintiff has presented sufficient evidence on the first element to survive summary judgment.  In particular, Plaintiff has provided evidence that he was attacked and beaten by another inmate while incarcerated and suffered injuries as a result.  This harm is sufficiently serious to implicate the Cruel and Unusual Punishment Clause and is sufficient to survive summary judgment.

Next, the Court turns to the subjective component.  As noted above, deliberate indifference entails something more than mere negligence, but something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result. Thus, before liability can be imposed, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw

---

[59]*Id.* (quoting *Farmer*, 511 U.S. at 835).

[60]*Farmer*, 511 U.S. at 837.

[61]*Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) *overruled on other grounds by Robbins v. Okla.*, 519 F.2d 1242 (10th Cir. 2008).

the inference.  Though the Court believes that there is insufficient evidence of Defendants Ray's

and Barnes' personal participation, the Court will analyze the facts as they relate to him.  The

Court will discuss the merits of Plaintiff's Eighth Amendment claim as it relates to the remaining

Defendants.[62]

        a.     *Ray and Barnes*

Defendant Ray testified that he knew Troy Kell was a white supremacist[63] and that he

knew that Kell was not allowed to have direct personal contact with anyone.[64]  Ray also testified

that he had seen the video of Kell murdering another inmate.[65]  However, Ray testified that he

had a good relationship with both Kell and Miranda,[66] that neither one of them had given him any

problems,[67] and that he regarded every inmate as dangerous.[68]  Ray also testified that he had

never observed any other altercation in the section of the prison in which Plaintiff and Kell were

being held.[69]

---

[62]While Plaintiff's Eighth Amendment claim against Defendant Barnes has been dismissed, that claim is substantially similar to Plaintiff's claim under Article 1, Section 9 of the Utah Constitution.  Therefore, the Court will analyze this claim as it relates to Defendant Barnes.

[63]Docket No. 133, Ex. C, at 19:18-20.

[64]*Id*. at 28:4-8.

[65]*Id*. at 69:10-19.

[66]*Id*. 16:8-17:13.

[67]*Id*.

[68]*Id*. at 20:24-21:1.

[69]*Id*. at 24:11-15.

Defendant Barnes testified that he heard rumors that Kell was a white supremacist.[70] Barnes, like Ray, had seen video footage of Kell's previous attack on another inmate[71] as part of his training.[72]  However, Barnes treated Kell, and all inmates, the same.[73]  Additionally, Defendant Barnes did not consider Kell as being particularly dangerous to blacks or other minorities.[74]  Finally, aside from the incident at issue here, Defendant Barnes was unaware of similar incidents.[75]

Plaintiff indicates that there are facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff existed.  In particular, Plaintiff points to the fact that Defendants witnessed the video of Kell murdering another inmate and the fact that Kell was a white supremacist.[76]  Plaintiff has also presented evidence from which one could infer that Defendants were aware that Plaintiff was a practicing Muslim.[77]  There is also evidence to support the idea that if Kell and Miranda were ever put together there would be a confrontation.[78]

---

[70] *Id*. Ex. B, at 21:20-22:1.

[71] *Id*. at 17:13-17.

[72] *Id*. at 20:10-25.

[73] *Id*. at 16:10-15; *id*. 17:5-9; *id*. at 25:21-25.

[74] *Id*. at 25:15-17.

[75] *Id*. at 35:3-16.

[76] *Id*. at 20:10-25; *id*. Ex. C, at 69:10-70:13; *id*. Ex. D, at 14:4-23.

[77] *See id*. Ex. E, at 70:17-73:12; *id*. Ex. H, at 38:3-12; *id*. Ex. J, at 16:7-21.  Defendant Ray denies he was aware that Plaintiff was Muslim.  *Id*. Ex. C, at 31:25-32:2.  Defendant Barnes states that he did not become aware that Plaintiff was Muslim until after the incident, during Ramadan.  *Id*. Ex. B, at 47:15-21.

[78] *Id*. Ex. H, at 50:11-17; *id*. Ex. J, at 28:17-30:18.

15

Taking these facts together, and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff has presented sufficient facts from which the inference could be drawn that a substantial risk of serious harm to Plaintiff existed should Plaintiff and Kell ever come in direct personal contact with each other.

There is no evidence, however, to show that Defendants Ray and Barnes ever drew such an inference. There is nothing to show that Defendants Ray and Barnes ever knew that Kell posed a specific risk to Plaintiff. Indeed, Defendant Ray testified that he had a good rapport with both Miranda and Kell and that he did not have any problems with either of them. Ray further testified that he had never observed a fight in that section of the prison. Defendant Barnes testified that he did not consider Kell as being particularly dangerous to blacks or other minorities. Additionally, Barnes testified that, apart from this incident, he was unaware of any similar incidents occurring in that section of the prison.

This case, as it relates to Defendants Ray and Barnes, is similar to *Verdecia v. Adams*. In that case, the plaintiff asserted that his rights under the Eighth Amendment "were violated when the defendants, acting with deliberate indifference to a substantial risk of harm to plaintiff, placed him in a cell with gang members who assaulted him because of his Cuban nationality."[79] The plaintiff in *Verdecia* was an inmate who had been transferred from the prison's general population and placed in a cell of the prison's Special Housing Unit with two inmates who were members of a gang known as the Latin Kings.[80] Two days after he was moved, Plaintiff asked a

---

[79] *Verdecia*, 327 F.3d at 1173.

[80] *Id.*

prison official to get him out of his cell in the Special Housing Unit.[81]  The next day, the plaintiff

filled out and delivered a transfer form to his case manager which indicated that the plaintiff

feared an attack from his cell mates.[82]  Four days later, the plaintiff was attacked by his cell

mates with a razor blade.[83]  As a result of the attack, the plaintiff was hospitalized and received

110 stitches.[84]

      The plaintiff alleged "that the series of events leading up to his assault created an obvious

risk when he was placed in the cell with two members of the Latin Kings."[85]  The plaintiff further

alleged that the defendants "incarcerated him under conditions posing a substantial risk of

serious harm, due to the prior incidents between Cuban inmates and members of the Latin

Kings."[86]

      The Tenth Circuit stated that "[the plaintiff] has presented sufficient facts from which the

inference could be drawn that a substantial risk of serious harm exists, but he has failed to

establish that [the defendants] actually drew such an inference."[87]  Without that subjective

awareness and knowledge of the risk, the court held that the defendants could not "be found to

have inflicted punishment in a manner that violates the Eighth Amendment."[88]

---

[81]*Id.*

[82]*Id.*

[83]*Id.*

[84]*Id.*

[85]*Id.* at 1174.

[86]*Id.* at 1175.

[87]*Id.* at 1176.

[88]*Id.*

The same situation is present here. As set forth above, Plaintiff has presented sufficient facts from which the inference could be drawn that a substantial risk of serious harm existed. However, Plaintiff has failed to present any evidence that Defendants Ray and Barnes ever drew such an inference. While there is evidence that Defendants Ray and Barnes knew Kell was dangerous, there is nothing in the record to suggest that Defendants Ray and Barnes were subjectively aware that Kell posed a specific risk to Plaintiff. Plaintiff further testified that he expressed concerns about being housed near white supremacists. However, there is no evidence that Defendants Ray and Barnes were made aware of these concerns. As a result, Defendants Ray and Barnes cannot be found to have inflicted punishment in a manner that violates the Eighth Amendment. As Plaintiff has not presented sufficient evidence that Defendants Ray and Barnes violated his Eighth Amendment rights, they are entitled to qualified immunity on Defendant's Eighth Amendment claim.

b.      *Healey*

Many of the facts applicable to Defendant Ray are equally applicable to Defendant Healey. Again, the Court finds that Plaintiff has presented sufficient evidence from which the inference could be drawn that a substantial risk of serious harm existed. However, unlike Defendant Ray, there is evidence that Defendant Healey actually drew this inference.

It is undisputed that Defendant Healey opened Kell's cell door while Plaintiff was completing his rec time. It is also undisputed that Healey told Kell that he would only open his door "[i]f you don't do anything to hurt Miranda"[89] or something to that effect. Further, Plaintiff has presented evidence that Healey asked Plaintiff if he was ready and told him to put his shoes

---

[89]Docket No. 133, Ex. D, at 29:16-17.

on.  Plaintiff has presented evidence that, in prison terms, someone telling you to put your shoes on means that there is going to be an altercation.

From this evidence, a jury could conclude that not only was Healey aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, but that he also drew the inference.  By stating that he would open Kell's cell door only if Kell would not hurt Plaintiff, there is evidence from which a jury could conclude that Healey was aware that there was a risk that Kell would attack Plaintiff if his door was opened.  By asking Miranda if he was ready and telling him to put his shoes on, there is sufficient evidence from which a jury could conclude that Defendant Healey anticipated an altercation between Kell and Plaintiff if he opened Kell's door.  From this, a jury could conclude that Defendant Healey was deliberately indifferent to a substantial risk of serious harm to Plaintiff.  Thus, Plaintiff has presented sufficient evidence that Defendant Healey violated his constitutional rights.

Turning to the second element of qualified immunity, Defendants do not dispute that the constitutional right involved here was clearly established at the time the of its alleged violation.  Further, a jury could find that Healey's actions were not objectively reasonable. Therefore, the Court finds that Plaintiff has met his burden and Defendant Healey is not entitled to qualified immunity on Plaintiff's Eighth Amendment claim.

B.    ARTICLE 1, SECTION 9 OF THE UTAH CONSTITUTION

Plaintiff's Second and Third Causes of Action arise out of Article I, Section 9 of the Utah Constitution.  That provision states as follows: "Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted.  Persons

19

arrested or imprisoned shall not be treated with unnecessary rigor."[90]  The Court will explore each clause separately.

      *1.     Cruel and Unusual Punishment*

      The first sentence of Article I, Section 9 closely approximates the language of the Eighth Amendment of the United States Constitution.[91]  Because of this, the Court's previous analysis of Plaintiff's Eighth Amendment claim is equally applicable to Plaintiff's Second Cause of Action based on the cruel and unusual punishment clause of Article I, Section 9.  For the same reasons set forth above, Plaintiff may pursue his Second Cause of Action as against Defendant Healey, but not Defendants Ray or Barnes.

      *2.     Unnecessary Rigor*

      The Utah Supreme Court has had little opportunity to define the contours of the unnecessary rigor clause.  In *Bott v. Deland*,[92] the court stated that "the guarantee against unnecessarily rigorous treatment extends both to prisoners and arrestees and protects them against unnecessary abuse."[93]  The court noted that "[t]he definition of 'abuse' focuses on 'needlessly harsh, degrading, or dehumanizing' treatment of prisoners."[94]  The court noted that "the prohibition against unnecessary rigor does not allow police officers to commit assault and

---

[90]Utah Const. art. I, § 9.

[91]*Dexter v. Bosko*, 184 P.3d 592, 595 (Utah 2008).

[92]922 P.2d 732 (Utah 1996) *abrogated by Spackman v. Bd. of Educ.*, 16 P.3d 533 (Utah 2000).

[93]*Id*. at 737.

[94]*Id*. at 740 (quoting *Sterling v. Cupp*, 625 P.2d 123, 131 (Or. 1981)).

battery on a criminal suspect."[95]  The court went on to "emphasize that unnecessary rigor must be treatment that is clearly excessive or deficient and unjustified, not merely the frustrations, inconveniences, and irritations that are common to prison life."[96]

The Utah Supreme Court again discussed the unnecessary rigor clause in *Dexter v. Bosko*. The court stated that "[t]he prohibition against unnecessary rigor clearly includes intentional physical abuse of persons under arrest or imprisoned."[97]  The court went on to state that "[t]he unnecessary rigor clause of the Utah Constitution protects persons arrested or imprisoned from the imposition of circumstances on them during their confinement that demand more of the prisoner than society is entitled to require.  The restriction on unnecessary rigor is focused on the circumstances and nature of the process and conditions of confinement."[98]

The court held that "[a] prisoner suffers from unnecessary rigor when subject to unreasonably harsh, strict, or severe treatment. *This may include being unnecessarily exposed to an increased risk of serious harm*."[99]  "When the claim of unnecessary rigor arises from an injury, a constitutional violation is made out only when the act complained of presented a substantial risk of serious injury for which there was no reasonable justification at the time."[100]

_____

[95]*Id*. at 741.

[96]*Id*.

[97]*Dexter*,184 P.3d at 596.

[98]*Id*.

[99]*Id*. at 597 (emphasis added).

[100]*Id*.

21

The court also emphasized that, in order to proceed with a private suit for damages, a plaintiff must establish that he or she suffered a flagrant violation of his or her constitutional rights.[101]

> The flagrant violation element means that a defendant must have violated clearly established constitutional rights of which a reasonable person would have known.  To be considered clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that [constitutional] right.  The requirement that the unconstitutional conduct be flagrant ensures that a government employee is allowed the ordinary human frailties of forgetfulness, distractability, or misjudgment without rendering [himself] liable for a constitutional violation.
>
> . . . .
>
> If an official knowingly and unjustifiably subjects an inmate to circumstances previously identified as being unnecessarily rigorous, that is obviously a flagrant violation.  Where a clear prohibition has not been previously known to the official, more may be required to establish a flagrant violation.  We are satisfied that a flagrant violation of the unnecessary rigor clause has occurred whenever the following two elements are established: First, the nature of the act presents an obvious and known serious risk of harm to the arrested or imprisoned person; and second, knowing of that risk, the official acts without other reasonable justification.
>     Whether a violation has occurred will depend on the specific facts of the case.  The finder of fact must first determine whether the risk of harm was serious, and whether that risk was obvious and known to the defendants.  If so, the finder of fact must then address what, if any, justification existed for the act, as well as the reasonableness of that justification. [102]

Here, Plaintiff has presented evidence that he was unnecessarily exposed to an increased risk of serious harm.  Prior to the Utah Supreme Court's statement in *Dexter*, this was not identified as being unnecessarily rigorous.  Thus, in order to proceed on his claim, Plaintiff must produce evidence that the nature of the act presented an obvious and known serious risk of harm

---

[101]*Id.*

[102]*Id.* at 598 (citation omitted).

to the arrested or imprisoned person; and, knowing of that risk, the official acted without other reasonable justification.

Plaintiff has presented evidence from which a jury could conclude that the act of opening Kell's cell door while Plaintiff was completing his rec time was an obvious and known serious risk to Plaintiff. As indicated above, evidence has been presented that Kell was a dangerous inmate, that he was on death row for murdering another inmate, and that he was not to have direct contact with other prisoners. Further, there is evidence that Defendant Healey knew of that risk. Healey's statement that he would open Kell's cell door so long as he would not hurt Plaintiff, asking if Plaintiff was ready, and telling Plaintiff to put on his shoes are all indicative of this knowledge. As with Defendant's Eighth Amendment claim, however, there is insufficient evidence as to the remaining Defendants.

Turning to the second element, Defendants assert that their actions were justified. However, based on the many disputed facts listed above, the Court finds that this issue of whether Defendant Healey's act of opening Kell's cell door was justified is one for the jury.

Based on the above, the Court finds that Plaintiff has presented sufficient evidence to survive summary judgment on his Unnecessary Rigor Clause claim as it relates to Defendant Healey. However, he was presented insufficient evidence to go forward on this claim against the remaining Defendants.

C.    CONSPIRACY CLAIMS

   1.    *Section 1985(3)*

Section 1985(3) prohibits two or more persons from conspiring "for the purpose of depriving, either directly or indirectly, any person . . of the equal protection of the laws, or of

equal privileges and immunities under the laws . . . ."[103]  "The essential elements of a § 1985(3)

claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and

immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting

therefrom."[104]

The first element of a § 1985(3) claim requires a showing of a conspiracy.  The Court is

mindful that "[d]irect evidence of a conspiracy is rarely available, and the existence of a

conspiracy must usually be inferred from the circumstances."[105]  However, in order to survive a

motion for summary judgment, Plaintiff must provide some factual basis to support the existence

of a conspiracy—agreement and concerted action.[106]

In support of his § 1985(3) claim, Plaintiff directs the Court's attention to *Fisher v.*

*Shamburg*.  In *Fisher*, the plaintiff, an African-America, was entering the front door of a café

when defendants, three white men, were leaving.[107]  In passing, one of the defendants uttered a

racial slur directed at the plaintiff.[108]  The plaintiff became uneasy about the safety of his car and

left the café a few minutes later.[109]  The defendants were in the parking lot and, as the plaintiff

---

[103]42 U.S.C. § 1985(3).

[104]*Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

[105]*Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980).

[106]*See Crabtree v. Muchmore*, 904 F.2d 1475, 1476 (10th Cir. 1990); *see also Babbar v. Ebadi*, 216 F.3d 1086, *8 (10th Cir. 2000) (unpublished decision) (stating that in order to survive summary judgment on a conspiracy claim plaintiff must furnish genuine factual basis to support defining elements of a conspiracy—agreement and concerted action).

[107]*Fisher*, 624 F.2d at 157.

[108]*Id*.

[109]*Id*.

walked towards his car, the defendants made insulting racial remarks to the plaintiff and one of the defendants hit him.[110]  The plaintiff suffered minor injuries as a result of the incident.[111]

The plaintiff then brought suit against the defendants under § 1985(3).  In relation to the conspiracy element, the district court found that there was a "slight chance" the defendants conspired together, resulting in a genuine issue of fact.[112]  The Tenth Circuit agreed finding that the trial court correctly refused to grant summary judgment on this ground.[113]  The court noted that direct evidence of a conspiracy is rarely available and must usually be inferred from the circumstances.[114]  As a result, the court held that whether or not a conspiracy existed was a matter for the jury.[115]

*Fisher* is distinguishable from the case before the Court.  The slurs in *Fisher* were made directly to and were made about the plaintiff.  That is not the case here.  Only two inmates testified that Defendant Barnes and Ray made racially- and/or religiously-based comments. Inmate Main testified that Barnes and Ray were "talking shit about Muslims and 9-11."[116] Inmate Wycherly stated that Barnes made a statement that all of the Muslims should go to Afghanistan to fight[117] and that Ray referred to Muslims as "sand niggers" or "rag heads" and

---

[110]*Id.*

[111]*Id.*

[112]*Id.* at 158.

[113]*Id.* at 162.

[114]*Id.*

[115]*Id.*

[116]Docket No. 133, Ex. H, at 25:15-16.

[117]*Id.* Ex. I, at 33:6-8.

stated that they should be killed.[118]  However, there is no evidence that any of these statements were made directly to or were made directly about Plaintiff.  Indeed, the only substantive evidence about what Defendants Ray and Barnes said about Muslims is from Inmate Wycherly who testified that the statements were made in a different section of the prison than the section which housed Plaintiff and Kell.[119]

*Fisher* is further distinguishable because the actions of the conspirators in that case took place over a brief period of time when all of the defendants were together.  As indicated above, insulting comments were made to the Plaintiff in *Fisher* just before he was hit by one of the defendants.  This is not the case here.  Even if Defendants Barnes and Ray made the insulting comments which have been attributed to them, there is no evidence Healey was present when these comments were made.  Further, there is no evidence that the opening of Kell's cell door or Kell's attack on Plaintiff were somehow related to those comments.  Finally, the record is unclear as to when, between September 11, 2001 and September 20, 2001, these statements were made.  Plaintiff argues that these inappropriate comments created a dangerous situation within the prison.  However, there is no evidence linking the alleged comments of Barnes and Ray to the incident which occurred on September 20, 2001.

Based on the above, the Court finds that the facts, when viewed in the light most favorable to Plaintiff, do not provide evidence of a conspiracy between the Defendants in this case.  Therefore, summary judgment is appropriate on this claim.  As a result of this ruling, the Court need not consider whether religiously-motivated animus is actionable under § 1985.

---

[118]*Id*. at 33:11-20.

[119]*Id*. at 35:9-36:6.

2.    *Section 1983*

"Allegations of conspiracy may . . . form the basis of a § 1983 claim."[120]  "However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."[121]  "'Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.'"[122]

"To demonstrate the existence of a conspiratorial agreement it simply must be shown that there was a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences."[123]  The Tenth Circuit has stated that a claim for conspiracy must often be proven with circumstantial evidence because "[r]arely . . . will there be direct evidence of an express agreement among . . . the conspirators to conspire."[124]

For the same reasons stated above in relation to Plaintiff's § 1985(3) claim, Plaintiff's § 1983 conspiracy claim fails.  There is no evidence that Defendants conspired to deprive Plaintiff of a constitutional right.

D.    EQUAL PROTECTION

To prevail on an Equal Protection claim, Plaintiff must show that the government has treated him differently than others who are similarly situated.[125]

---

[120]*Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).

[121]*Id.*

[122]*Id.* (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)).

[123]*Snell v. Tunnell*, 920 F.2d 673, 702 (quotation marks and citation omitted).

[124]*Id.* (quotation marks and citation omitted).

[125]*See Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996).

Case 2:03-cv-01097-TS   Document 153   Filed 02/13/09   Page 28 of 28

Plaintiff alleges that he was treated differently as a result of his race and religion. However, Plaintiff has failed to present evidence that he was treated differently than other inmates because of his race or religion.  Indeed, Plaintiff has admitted that he does not believe that his race was a motivating factor for the officers.[126]  There is evidence that Defendants Ray and Barnes made comments that were either racially or religiously insensitive.  However, there is no evidence that these statements were made to or about Plaintiff.  The Court finds that Plaintiff has not shown that Defendants treated him different as a result of his race or religion.  As Plaintiff has not shown that Defendants' actions violated a constitutional right, Defendants are entitled to qualified immunity on Plaintiff's Equal Protection Claim.

V.  CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 130) is GRANTED IN PART AND DENIED IN PART.

DATED   February 13, 2009.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[126]Docket No. 133, Ex. E, at 132:9-14.