IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JACQUES DUPREE MIRANDA,<br><br>    Plaintiff,<br><br><br><br>    vs.<br><br><br><br>STATE OF UTAH, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART WITNESS KELL'S MOTION TO QUASH WRIT OF HABEAS CORPUS AD TESTIFICANDUM/ TRANSPORTATION ORDER<br><br><br><br>Case No. 2:03-CV-1097 TS |

On February 24, 2009, the Court issued an Order[1] directing the Utah Department of Corrections to make witness Troy Kell available to testify via video conference. The Court issued a Writ of Habeas Corpus ad Testificandum to that effect on February 25, 2009.[2] Kell, through counsel, now moves to quash the Writ. Kell indicates that, if called to testify, he will seek to invoke his Fifth Amendment privilege against every question asked of him because of ongoing state and federal post-conviction proceedings. In the alternative, Kell asks that his

---

[1]Docket No. 179.

[2]Docket No. 187.

1

Federal Public Defender, Ms. Megan Moriarty, be allowed access to him prior to and during any video teleconferencing. For the reasons set out below, the Court will deny the Motion to Quash, but will issue an order directing the Utah Department of Corrections to allow Kell access to his Federal Public Defender prior to and during the video teleconference.

## I.  MOTION TO QUASH

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."[3] The Fifth Amendment's privilege against self-incrimination "protects two distinct rights: first, a defendant's right not to take the witness stand at his own criminal trial and, second, the privilege of any witness, in any formal or informal governmental proceeding, not to answer questions when the answers might incriminate him."[4] The privilege "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."[5]

In order to invoke the Fifth Amendment privilege against self-incrimination, the person asserting that privilege "must demonstrate that they have a 'reasonable cause to apprehend danger' upon giving a responsive answer that 'would support a conviction,' or 'would furnish a link in the chain of evidence needed to prosecute' them for a violation of the criminal statutes."[6] In order to satisfy this requirement, the individual "must factually establish that the risks of

---

[3] U.S. Const. amend. V.

[4] *Roach v. Nat'l Transp. Safety Bd.*, 804 F.2d 1147, 1151 (10th Cir. 1986).

[5] *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972).

[6] *United States v. Schmidt*, 816 F.2d 1477, 1481 (10th Cir. 1987) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).

incrimination resulting from their compelled testimonial communications be 'substantial and real, not merely trifling or imaginary, hazards of incrimination.'"[7]  "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so—does not of itself establish the hazard of incrimination."[8]

Further, it is important to emphasize that the Fifth Amendment privilege is a personal privilege.[9]  Further, there is no blanket Fifth Amendment privilege.[10]  As the Tenth Circuit has explained, "this is a privilege to decline to respond to inquiries, not a prohibition against inquiries designed to elicit responses incriminating in nature."[11]  Thus, only Kell, not his counsel, is the proper party to invoke his Fifth Amendment privilege[12] and the blanket invocation contained in the Motion to Quash is inadequate.  Because of this, the Court will deny the Motion to Quash.  However, the Court will direct that Kell have access to his Federal Public Defender prior to and during the video teleconference.  Ms. Moriarty, in conjunction with Defendant's counsel, shall work to make the necessary arrangements.

---

[7]*Id*. (quoting *Machetti v. United States*, 390 U.S. 39, 53 (1968)); *see also Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 478 (1972) ("[T]he privilege protects against real dangers, not remote and speculative possibilities.").

[8]*Hoffman*, 341 U.S. at 486.

[9]*Couch v. United States*, 409 U.S. 322, 328 (1973).

[10]*See Roach*, 804 F.2d at 1151; *see also Schmidt*, 816 F.2d at 1482.

[11]*Roach*, 804 F.3d at 1151 (quotation marks and citation omitted).

[12]*See Schmidt*, 816 F.2d at 1481 n.3.

## II.  PROCEDURE FOR INVOKING FIFTH AMENDMENT RIGHT

The Tenth Circuit has explained the proper procedure for the Court to follow when an individual wishes to invoke his Fifth Amendment privilege as follows:

> To rely on this facet of the Amendment's protection, a witness must normally take the stand, be sworn to testify, and assert the privilege in response to each allegedly incriminating question as it is asked.  Unless a witness thus objects, the Government may ordinarily assume its compulsory process does not elicit testimony the witness considers incriminating.  A witness can prevail in his assertion of the privilege only when he has reasonable cause to apprehend danger from a direct answer.  Unless the danger of self-incrimination is readily apparent the burden of showing such danger exists rests with the claimant of the privilege. The court, not the witness, must determine whether he is entitled to prevail on the privilege.[13]

When Kell is called as a witness, the Court will employ the following procedure outside the presence of the jury.  First, Kell must take the stand, be sworn to testify, and assert the privilege on a question-by-question basis.  Kell must make the necessary record that he has a reasonable cause to apprehend danger upon giving a responsive answer that would support a conviction, or would furnish a link in the chain of evidence needed to prosecute him for a violation of the criminal statutes.[14]  Second, the Court must determine whether Kell is entitled to the privilege.  The Court intends to do conduct this proceeding on March 3, 2009, at 8:30 a.m.

The Court notes that there are some topics which appear to fit within the Fifth

---

[13] *Roach*, 804 F.2d at 1151-52 (quotation marks and citation omitted).

[14] In his Supplement to Motion to Quash Writ of Habeas Corpus ad Testificandum/Transportation Order, Kell states that he is currently in the process of challenging his conviction and death sentence and, therefore, legitimately fears that he could face a re-trial and/or re-sentencing in the future.  As a result, he argues that he has a legitimate fear of adverse consequences from testifying in this proceeding.  *See United States v. Rivas-Macias*, 537 F.3d 1271, 1279 (10th Cir. 2008).  While this may be sufficient to invoke his Fifth Amendment privilege as to the details surrounding his crime of conviction, it is not a sufficient basis to quash the writ.

Amendment privilege.  For example, the murder of Lonnie Blackmon is still the subject of post-conviction proceedings.  Therefore, Kell is likely to be entitled to the Fifth Amendment privilege on this topic.  Other topics, such as the incident at issue here, however, do not appear fit within the Fifth Amendment's protection.  This is especially true where the state has issued a declaration that it has officially declined to prosecute Kell in conjunction with this incident.[15]  Further, there is some question as to whether Kell has waived his Fifth Amendment privilege as to certain topics by making certain statements during his deposition in this case.[16]  Kell argues that the statements made during his deposition in this matter did not waive his ability to assert his Fifth Amendment privilege.  However, waiver, if any, is a matter to be determine at the time that Kell invokes his Fifth Amendment privilege.  A final consideration is whether, if Kell invokes his Fifth Amendment privilege, an adverse inference should be drawn.[17]  These are matters to be addressed outside of the presence of the jury at the time Kell is called.

---

[15] Docket No. 179, at 2.

[16] *Mitchell v. United States*, 526 U.S. 314, 321 (1999) (quoting *Brown v. United States*, 356 U.S. 148, 154-55 (1958)) ("It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details.  The privilege is waived for the matters to which the witness testifies, and the scope of the 'waiver is determined by the scope of the relevant cross-examination.'").  In reviewing his deposition, Kell appears to have only invoked his Fifth Amendment privilege against self-incrimination on two matters: (1) the murder of Lonnie Blackmon (Kell Depo. at 8-9, 60); and (2) the statement allegedly made by Kell to the makers of "Gladiator Days" that "I could have killed the guy but I didn't.  I've killed enough people in my life.  The only killing I will see again is them killing me." (Kell Depo. 35-37).

[17] *See LiButti v. United States*, 107 F.3d 110, 120-25 (2d Cir. 1997); *United States v. Custer Battles, LLC*, 415 F.Supp. 2d 628, 632-36 (E.D. Va. 2006).

It is therefore

ORDERED that Witness Kell's Motion to Quash Writ of Habeas Corpus ad Testificandum/Transportation Order (Docket No. 192) is GRANTED IN PART AND DENIED IN PART, as set forth above.

DATED   February 26, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge